Borenstein, J.
The plaintiff, John Bruder, filed this petition[2] seeking a declaration on the constitutionality of G.L.c. 123A as amended by St. 1990, c. 150, §304,[3] and St. 1993 c. 489, §2.
*659 For the following reasons, the defendant’s motion to dismiss is ALLOWED.
BACKGROUND
On May 10, 1983, Plaintiff John Bruder pleaded guilty to charges under G.L.c. 265, §23, sexual assault upon a person under sixteen years of age. The court found the plaintiff to be a Sexually Dangerous Person (“SDP") and committed him to the Massachusetts Treatment Center (“Treatment Center”) in Bridgewater. His commitment was for an indefinite term of “not less than one day nor more than his natural life,” pursuant to G.L.c. 123A, §5, as effective at the time. By statute, each year the plaintiff may petition the court for discharge from the Treatment Center. G.L.c. 123A, §9.
Since the time the court committed the plaintiff to the Treatment Center, the Legislature has amended G.L.c. 123A, repealing §§3-6 and 7 St. 1990, c. 150, §304. The amendment, effective September 1, 1990, mandates that no new SDPs will be committed to the Treatment Center. The Legislature also provided for the continued confinement at the Treatment Center of all persons who had already been committed thereto, prior to the effective date of the amendment. St. 1990, c. 150, §104.
In addition, during the period of his commitment, the Legislature transferred the control of the Treatment Center from the Department of Mental Health (“DMH”) to the Department of Correction (“DOC”). G.L.c. 123A, §2, as amended by St. 1993, c. 489, §2. The plaintiff claims that the transfer of control of the Treatment Center to DOC changes the civil nature of his commitment as a SDP to criminal. As such, the plaintiff asserts, the amendment to Chapter 123A, repealing §§3-6 and 7 and changing the control of the Treatment Center violated Equal Protection, Double Jeopardy, Ex Post Facto and Due Process Clause of the Federal and Massachusetts Constitutions.
DISCUSSION
I.Equal Protection
The plaintiff asserts that his continued commitment to the Treatment center violates equal protection because the amended Chapter 123Ano longer allows the commitment of convicted sexual offenders thereto. This court disagrees. Equal protection review does not compare the treatment of convicted sex offenders by two different statutes, the unamended versus the amended. See Commonwealth v. Purdy, 408 Mass. at 685.
Equal protection scrutiny of Chapter 123Amustbe examined in light of the application thereof to the plaintiff and all those similarly situated at the time of his commitment. At the time of the commitment, people similarly situated in the plaintiffs position were those determined to be sexually dangerous. After the amendment of Chapter 123A, people similarly situated in the plaintiffs position were all the SDPs who had already been committed to the Treatment Center prior to the amendment.
At the time of the plaintiffs commitment, Chapter 123A was applied equally to him as well as to all other SDPs committed to the Treatment Center. After the repeal of §§3-6 and 7, the amended Chapter 123Awas applied equally to him as all other SDPs who had already been committed to the Treatment Center prior to the effective date of the amendment; the amended statute simply continued their commitment at the Treatment Center. Thus, the commitment of the plaintiff under Chapter 123A and his continuing commitment under the amended Chapter 123A do not violate equal protection.
The seeming classification of convicted sex offenders by the amended Chapter 123A does not trigger equal protection analysis because convicted sex offenders are not treated differently by a single statute. Rather, convicted sex offenders are treated differently by different statutes, one that existed prior to the amendment and another that became effective after the amendment.
II.Double Jeopardy and Ex Post Facto
The Double Jeopardy Clause applies only to criminal and not civil matters. See Hill, petitioner, 422 Mass. 147, 152 (1996). Similarly, the Ex Post Facto Doctrine applies to criminal cases. See Commonwealth v. Fourteen Thousand Two Hundred Dollars, 421 Mass. 1, 7 (1995); Dept. of Revenue v. Roe, 31 Mass.App.Ct. 924, 926 (1991). Massachusetts courts have ruled that the commitment of SDPs to the Treatment Center is civil in nature. See Hill, 422 Mass. at 154; Commonwealth v. Barboza, 387 Mass. 105, 111-12 (1982). Accordingly, Double Jeopardy and Ex Post Facto do not apply to the plaintiffs civil commitment to the Treatment Center.
The plaintiff argues that the transfer of control of the Treatment Center from the DMH to the DOC changed the civil nature of his commitment to that of a criminal one. This court disagrees. The status of the plaintiffs commitment is not dictated by which agency of the Commonwealth controls the Treatment Center. The plaintiff is entitled to the same care and attention under the control of the DOC as he would have under the DMH. Compare G.L.c. 123A, §2, as amended by St. 1993, c. 489, §2 (duties of DOC) and G.L.c. 123A, §2 as unamended (duties of DMH). Because the civil status of the plaintiff remains unchanged notwithstanding the transfer of control of the Treatment Center, Double Jeopardy and Ex Post Facto principles do not apply.
III.Due Process
A. Procedural
The plaintiff contends that the transfer of control of the Treatment Center changed the civil nature of his commitment to that of a criminal commitment. Because the attachment of the criminal status occurred *660 without notice and hearing, the plaintiff argues, his due process rights were violated.
This court has found that the transfer of control of the Treatment Center does not affect the nature of the plaintiffs civil commitment. See discussion, supra p. 5-6. For that reason, the plaintiff was not entitled to notice or hearing regarding the DOC’s control of the Treatment Center. Thus, the plaintiffs procedural due process rights were not violated.
B. Substantive
The plaintiff contends that his commitment under Chapter 123A is unconstitutional because the statute does not require proof of a mental illness for such commitment. The plaintiff cites Foucha v. Louisiana, 504 U.S. 71 (1991), to support his position that he must first be found to be mentally ill before he may be civilly committed. His reliance on Foucha v. Louisiana, supra, is misplaced.
In Foucha, the petitioner was charged with aggravated burglary and illegal discharge of a firearm, and was found not guilty by reason of insanity. Under Louisiana law, he was committed to a psychiatric hospital and was entitled to release upon a finding that he was no longer mentally ill and that he was not a threat to himself or other people. At a hearing to determine whether he was a candidate for release, evidence revealed that the petitioner had recovered from his mental illness but was suffering from an untreatable case of antisocial personality. This disorder rendered him a danger to himself and other people. Based on the antisocial personality, the trial judge ordered the petitioner’s continued commitment. Foucha, 504 U.S. at 73-75. The State Supreme Court upheld the commitment, holding that the petitioner had failed to cany the burden of proving that he was not dangerous. Id. at 75.
On review, the U.S. Supreme Court held that the petitioner’s continued commitment under the Louisiana statute violated due process and equal protection. Id. at 77. The Court held that once the original ground, namely, mental illness, for committing the petitioner dissipated, he was entitled to release. The State of Louisiana had no punitive interest in the petitioner’s confinement because he had not been convicted of any crime. Id. at 73-75. Thus, the petitioner’s continued commitment notwithstanding his recovery violated due process. Id. Moreover, the Court held that the placing of the burden on petitioner to prove that he was no longer a menace to society, before releasing him, violated equal protection. Id. at 85.
A civil commitment need not be based upon mental illness. The U.S. Supreme Court has recognized circumstances where the state may civilly commit a person for being a danger to society so long as the scheme of confinement is sharply focused and carefully limited. Id. at 80 (citing United States v. Salerno, 481 U.S. 739 (1986)). In this case, the plaintiff was originally committed to the Treatment Center for being a SDP. His continued commitment is valid because he remains a SDP. Unlike the Louisiana statute in Foucha which required the petitioner to prove that he was no longer dangerous before he is released, §9 of Chapter 123A puts the burden on the Commonwealth to show that the plaintiff remains a SDP before his commitment may be continued. Each year the plaintiff is entitled to petition the court for discharge from commitment. The Commonwealth may only continue the plaintiffs commitment if it proves beyond a reasonable doubt, in an adversarial hearing, that the plaintiff remains sexually dangerous. Moreover, the SJC has held that the commitment scheme of SDPs under Chapter 123A satisfies federal constitutional requirements. Hill, 422 Mass. at 152. Thus, the commitment of the plaintiff under Chapter 123A is consistent with the Foucha holding.
ORDER
Based upon the foregoing, it is hereby ORDERED that defendant’s motion to dismiss be ALLOWED.

 The plaintiff styled this petition as Petition for Habeas Corpus; this court shall treat it as a Petition for Declaratory Judgment.

 St. 1990, c. 150, §304 repeals §§3-6 and 7 of G.L.c. 123A, not St. 1990, c. 150, §104 as the plaintiff has cited.