**The PEOPLE of the State of Colorado, Petitioner–Appellee,**

**J.A.E.S. by S.M., next friend, Child, and J.J.H., Obligor, Respondent–Appellant.**

**No. 99CA0572.**

Colorado Court of Appeals, Div. III.

Feb. 3, 2000.

As Modified on Denial of Rehearing July 6, 2000.

Frank James Saccomanno, Rita M. Connerly, Adams County Attorneys Office, Denver, Colorado, for Petitioner–Appellee.

J.J.H., Pro Se.

Opinion by Judge TAUBMAN.

J.J.H. (father) appeals the judgments establishing paternity and determining child support and arrearages. We affirm in part, reverse in part, and remand for further proceedings.

The People, through the Adams County Delegate Child Support Enforcement Unit, filed a petition for determination of paternity and issuance of an order requiring the payment of child support and a child support debt concerning J.A.E.S. (child). The petition was filed in September 1994 and served on father in Denver, Colorado. This apparently occurred after he was released from federal prison, where he had been serving a sentence since 1985. The petition sought reimbursement of the amounts of public assistance paid to the child's mother between 1985 and 1995, an order to establish retroactive child support from the child's birth in 1981 until May 1995, and an order for ongoing, or current, child support.

In June 1996, a summary judgment was entered declaring J.J.H. to be the biological father of the child. A child support judgment was entered in July 1998, *nunc pro tunc* to June 1996, for ongoing child support of $243 per month and a $12,907.50 judgment for child support arrearages calculated from the child's birth in November 1981 until May 1995. No prior child support orders had been entered.

A prior appeal filed by father in October 1996 was dismissed without prejudice for lack of a final order.

## I. Personal Jurisdiction

Relying on § 19–4–109(2), C.R.S.1999, father first asserts that the trial court lacked personal jurisdiction over him since the child was not conceived by acts of sexual intercourse in the state of Colorado. We disagree.

Personal service upon a natural person within the forum state enables that state to exercise personal jurisdiction over the party served and satisfies due process requirements. *Burnham v. Superior Court,* 495 U.S. 604, 110 S.Ct. 2105, 109 L.Ed.2d 631 (1990); *In re Custody of Nugent,* 955 P.2d 584 (Colo.App.1997).

Here, father was served in the state of Colorado, where both mother and the child resided. Accordingly, the court had personal jurisdiction to determine the issues of paternity and child support, even if father did not have sexual intercourse in Colorado to conceive the child so as to afford personal jurisdiction under § 19–4–109(2).

## II. Retroactive Child Support

Father also asserts that the trial court's order of retroactive child support is defective because the court did not adequately consider his past and current familial obligations. We agree in part.

Generally, proceedings to establish and enforce child support obligations operate prospectively from the date of commencement of support proceedings. However, in an action under the Uniform Parentage Act, a court may determine liability and enter orders for reimbursement of past support provided by the custodian to the child. *In re Marriage of Smith,* 7 P.3d 1012 (Colo.App. 1999); *People in Interest of A.A.V.,* 815 P.2d 997 (Colo.App.1991).

The child support debt must be based on the amount of child support due under the current child support enforcement guidelines then in effect multiplied by the number of months the family received public assistance. Also, the total amount of child support debt shall not exceed the total amount paid through public assistance. Section 14–14–104(1)(b), C.R.S.1999.

Thus, under § 14–14–104(1)(b), an obligor is liable to the county department of social services (department) for an amount not exceeding the full amount of public assistance

paid during the period when no order for child support existed. This provision may expose a responsible parent who had not been subject to an initial order to the same liability that would have resulted if there had initially been a court order directed to that parent pursuant to § 14–14–104(1)(a), C.R.S. 1999. *Cf. In re Marriage of Ward,* 856 P.2d 67 (Colo.App.1993) (under prior version of § 14–14–101(1)(b), court must establish child support debt in an amount equal to or greater than the amount of public assistance paid).

 The parent's financial resources, including current child support obligations, are pertinent in devising a schedule for repayment of the public assistance debt, and the trial court may order that such payment commence after the obligation to pay current child support has expired. *In re Marriage of Ward, supra.*

Here, the department calculated the ongoing monthly support after applying the child support guidelines to the income of the parents based upon Department of Labor and Employment printouts. This method is authorized by statute. *See* §§ 14–10–115(7)(c) and 19–4–116(6)(k), C.R.S.1999. The judgment for arrearages was based upon $9,722.50 in public assistance that was actually received by mother from March 1985 through May 1995 and $3,185 additional support for the period between the child's birth in 1981 and February 1985.

 The trial court ordered that upon the presentation of sufficient proof it would give father credit for any payments he had previously made for this child and would adjust the amount of support to account for his support of two additional children. Father submitted with his motion to modify judgment affidavits from himself, his first wife, and his present wife attesting that as of September 1996: (1) his first wife had received more than $3,000 in child support directly from father; (2) that father had remarried and was supporting two children of his second marriage, and that his present wife was not working outside the home; and (3) that father was then unemployed. Because it appears that the trial court did not address the applicability of the affidavits despite its earlier statement that it would adjust the amount of support to account for father's past payments and present financial circumstances, the cause must be remanded to address these materials. On remand, the trial court should determine whether father is entitled to a reduction of the amount of child support arrearages based upon amounts his first wife has stated that she received directly from father for child support, and to determine whether father's monthly payments for child support arrearages should be reduced based upon his financial circumstances between 1996 and 1998.

### III. Constitutional Challenges to Retroactive Support Order

Father also contends that the statutes under which the determination of paternity and obligation for child support were made violated his constitutional rights because the applicable statutes allowed the trial court to enter orders in 1996 and 1998 respecting his obligation to pay child support between 1981 and 1995. He argues that such orders denied his rights to due process and equal protection and violated the *ex post facto* clauses of the Colorado and United States Constitutions. We disagree.

### A.

We reject father's contention that the child support orders violated his rights under the state and federal *ex post facto* clauses.

 We note initially that, under the U.S. Constitution, the prohibition against *ex post facto* laws applies only to penal statutes. *See Weaver v. Graham,* 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981).

 Under the Colorado constitution, *ex post facto* analysis is limited to criminal cases. However, in the civil context, as here, Colorado courts have considered *ex post facto* challenges under the Colorado constitution based on a retrospective statute analysis. *See Gasper v. Gunter,* 851 P.2d 912 (Colo. 1993). Accordingly, we will do the same.

 A statute is presumed to be constitutional and the burden is on the party attacking the statute to establish its unconstitution-

ality beyond a reasonable doubt. *People in Interest of C.M.*, 630 P.2d 593 (Colo.1981).

A statute is not unconstitutional merely because the facts upon which it operates occurred before the adoption of the statute. *People v. D.K.B.*, 843 P.2d 1326 (Colo. 1993). Nor does the modification of the remedy for collection of past-due support impair a vested right that belongs to father. *See Ficarra v. Department of Regulatory Agencies*, 849 P.2d 6 (Colo.1993) (vested right must be more than a mere expectation based upon an anticipated continuance of existing law); *Colorado Department of Social Services v. Smith, Harst & Associates, Inc.*, 803 P.2d 964 (Colo.1991) (a vested right in remedies does not exist).

Based upon the above principles, we conclude that father's right not to be subjected to an *ex post facto* law or a retrospective statute has not been violated. *See, e.g., Department of Revenue v. Roe*, 31 Mass.App.Ct. 924, 577 N.E.2d 323 (1991) (there is no retroactive application of law creating child support obligations since duty of support arose at time of child's birth regardless of father's knowledge); *In re Paternity of Brad Michael L.*, 210 Wis.2d 437, 564 N.W.2d 354 (1997) (same).

Indeed, the inherent right to child support belongs to the child. *In re Marriage of Murray*, 790 P.2d 868 (Colo. App.1989). Both parents have a legal duty to support the child. *Abrams v. Connolly*, 781 P.2d 651 (Colo.1989). This duty existed before the adoption of the specific statutes that were applied in this case. *See People in Interest of A.A.T.*, 191 Colo. 494, 554 P.2d 302 (1976).

### B.

We similarly reject father's contention that his rights to due process and equal protection were violated.

As noted, § 14–14–104(1)(b) provides for the determination of the accrued child support debt of an absent parent when there has been no prior order of support. Except in limited circumstances in which income may be averaged over several years, the child support guidelines are applied to the parties' current income and, therefore, the statute does not implicate due process or equal protection concerns. *Montezuma County Department of Social Services v. Laner*, 937 P.2d 903 (Colo.App.1997).

Here, father was notified and attended all hearings that were conducted to determine child support and the judgment for arrearages. Continuances were initially granted when he contested paternity. Accordingly, we are satisfied that he was afforded due process.

Furthermore, father has not established that he was treated differently from similarly situated parents, and therefore he has not established the necessary predicate to support an equal protection challenge. *See People v. Black*, 915 P.2d 1257 (Colo. 1996).

The judgment of paternity is affirmed, and the judgment determining child support and arrearages is affirmed in part, reversed in part, and remanded for further proceedings.

Judge JONES and Judge NEY concur.